**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Plaintiff
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone: (646) 593-8866
Fax:    (212) 618-0213
E-mail: rwanchoo@wanchoolaw.com


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

S. SHIPPING INC.,                                              ECF CASE

      Plaintiff,                 08 CV 00045 ( VM )

  - against -

M&B SHIPPING S.A.,
ALLIANCE SHIPPING GROUP,
EUROBEL SHIPPING + TRADING e.K.,
EUROBEL GmbH, and
Mr. HERWIN DUUS,

      Defendants.

-----------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR AN ORDER
OF MARITIME ATTACHMENT AND GARNISHMENT
PURSUANT TO RULE B(1) OF THE SUPPLEMENTAL
RULES FOR CERTAIN ADMIRALTY AND MARITIME
<u>CLAIMS OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>**


<u>PRELIMINARY STATEMENT</u>

   Plaintiff, S. Shipping Inc., ("Plaintiff"), respectfully submit this Memorandum of Law in

support of its application for an order directing the Clerk of the Court to issue Process of

Maritime Attachment and Garnishment pursuant to Rule B(1) of the Supplemental Rules for

Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure in connection

with Plaintiffs' admiralty and maritime claims in the amount of $1,653,802.36 (U.S. Dollars One Million Six Hundred Fifty Three Thousand Eight Hundred Two and Cents Thirty Six) resulting from breach of two charter party contracts.

## STATEMENT OF FACTS

### M.V. AKSOY

On or about February 22, 2008, a time charter party (the "Charter") was made between Plaintiff, as owner of the Vessel, and Defendant M&B, charterer whereby M&B chartered the Vessel for the carriage of lawful permissible cargo from the time of delivery until redelivery to owners for a period of 6+3+3 months +/- 20 days in charterer's option. The Charter provided inter alia, that:

> The Owners shall be at liberty to withdraw the Vessel from the service of the Charterers without prejudice to any claims they (the owners) may otherwise have on the Charterers.

The performance of the Charter was guaranteed by Alliance who are "responsible for any liability, loss or damage and payments of hire/bunker/transit passing fee, agency fee, whatsoever to be incurred and/or incur due to non-performance of M&B Shipping S.A. . . ."

The Charter provided that M&B shall pay for the use and hire of the Vessel at the rate of $6,000.00 per day pro rata payable every 15 day in advance.

Pursuant to the Charter, Plaintiff delivered the Vessel to M&B at Istanbul road on 28/02/2008.

Despite various reminders, M&B has defaulted and/or neglected to pay the hire charges due from November 6, 2008 in the amount of $225,910.00.

By reason of Defendant's failure to pay charter hire, pursuant to clause 11 of the Charter, Plaintiff has withdrawn the Vessel from the service of the charterers without prejudice to its claim for damages arising under the Charter.

In order to comply with the bill of lading the Vessel was to discharge and deliver the goods to consignee at Tartous. On or about November 9, 2008, the Vessel arrived at Tartous and tendered notice of readiness at 17:00 hours. The Vessel commenced discharge at 13:45 hours on December 12, 2008 and completed discharge at 19:30 hours on December 13, 2008. The Plaintiff also incurred discharge port disbursements in the sum of $17,250.00 at Tartous. The Defendant has also not paid the bunker charges for the bunker supplied by Global Bunker Supply in the amount of $71,700.00. Plaintiff now claims reimbursement of the above amount in the sum of $88,950.00.

**M.V.KARASOY**

On or about September 10, 2008, a time charter party (the "Charter") was made between Plaintiff, as owner of the Vessel, and Defendant M&B, as charterer whereby M&B chartered the Vessel for the carriage of lawful permissible cargo from the time of delivery until redelivery to Owners for a period of 6 months.

The performance of the Charter was guaranteed by Alliance who are "responsible for any liability, loss or damage and payments of hire/bunker/transit passing fee, agency fee, whatsoever to be incurred and/or incur due to non-performance of M&B Shipping S.A. ....."

The Charter provided that M&B shall pay for the use and hire of the Vessel at the rate of $6,600.00 per day pro rata payable every 15 day in advance.

Pursuant to the Charter, Plaintiff delivered the Vessel to M&B at Samsun, Turkey on September 25, 2008.The Vessel loaded her cargo at Rostov-On-Don, Russia and sailed to New Holland, United Kingdom.

On or about November 6, 2008 Plaintiff submitted its hire statement to the Defendant for hire charges in the amount of $98,062.50. However, despite various reminders M&B failed and/or neglected to pay the hire charges.

On or about November 19, 2008, due to Defendant's continued failure to pay the hire, Plaintiff has withdrawn the Vessel from the service of the charterers without prejudice to its claims it may otherwise have on the charterers.

On or about December 3, 2008, the Vessel discharged her cargo at New Holland. Despite various reminders, Defendant has failed and/or neglected to pay the charter hire in the amount of $183,050.00, which it owed to the Plaintiff. Plaintiff has also incurred expenses towards bunkers on delivery and unpaid port disbursement in the amount of $87,550.42.

The Vessel was to be redelivered at the earliest by March 25, 2009. At present, Plaintiff estimates the market price of the Vessel is about $ 3000 per day. By reason of Defendant's breach of Charter as per paragraph 17, Plaintiff estimates that it will be damaged in the amount of $ 403,200 [($6,600 - $3000) x 112 days].

### PLAINTIFF'S CLAIM AGAINST DEFENDANT, EUROBEL SHIPPING FOR ENFORCEMENT OF MARITIME LIEN ON SUB-HIRE

Defendant, M&B in turn sub-chartered the Vessel to Defendant, Eurobel. Clause 23 of the Charter between Plaintiff and M&B provided as follows:

> The owners shall have a lien upon all cargoes and all sub-freights and/or sub-hire for any amounts due under this Charter Party, including general average contributions, and the Charterers shall have a lien on the Vessel for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be returned at once.
>
> The Charterers will not directly or indirectly suffer, nor permit to be continued, any lien or encumbrance, which might have priority over the title and interest of the owners in the Vessel. The Charterers undertake that during the period of this Charter Party, they will not procure any supplies or necessaries or services, including any port expenses and bunkers, on the credit of the owners or in the Owners' time. (emphasis added).

4

On or about November 20, 2008, upon Defendant M&B's failure to pay the charter hire, Plaintiff served a Notice of Lien on sub-hire on Defendant Eurobel advising them that Plaintiff is exercising its lien on the sub-hire payable by them to M&B. Plaintiff advised Eurobel that:

> The above named time charterers have failed to pay the time charter hire and therefore we exercised our right of withdrawal on 13 November 2008 and brought the time charter contract for the mv AKSOY to an end.
>
> We have exercised our right of withdrawal for mv KARASOY on 19 November 2008 and brought the relevant time charter agreement to an end as well.
>
> As we all are aware, our time charterers have let these vessels to yourselves. We are informed that you have let these vessels under voyage charters and you have collected the relevant freights. However, we are also informed that you have failed to pay bunker costs and the time charter hires to our time charterers.
>
> Please take notice by this message that we exercise our right of lien over all sub-hires, freights, sub-freights and therefore you are supposed to pay the time charter hires to our firm.
>
> Accordingly, please pay USD 326,631.6 for unpaid bunker costs together with USD 187,237.5+ [(USD 6600 x 9 days for estimated hire until end of completion of MV KARASOY's present voyage=USD 59,400)+ (USD 6000 x 7 days for estimated hire until end of completion of MV AKSOY's present voyage:USD 42,000)] for unpaid time charter hires and USD 22,072.5 for unpaid discharge ports d/a and unpaid Bosphorus+Dardanel straits passages into our below bank account within 2 working days

Despite Plaintiff's notification to Defendant Eurobel that it was exercising its maritime lien on sub-hire and that any hire payable by Eurobel to M&B should be payable to Plaintiff, Defendant Eurobel has neither responded to the lien notice nor has it paid the sub-hire to Plaintiff in breach of its lien on the sub-hire earned by the Vessel.

On or about November 21, 2008, Plaintiff entered into a Settlement Agreement ("Agreement") with the bunker Supplier, Global Bunkers Ltd., ("Global"), and paid an amount of $32,500 with respect to Aksoy and $73,942.60 with respect Karasoy towards bunkers supplied to the above vessels, as Global has threatened arrest of ship if the bunker costs are not paid. In

this Agreement Plaintiff further undertook to pay the balance amount of $39,200 in respect of Aksoy and $104,245.00 in respect to Karasoy in installments at a future date, if the same are not paid by Defendants. On or about December 4, 2008, Global assigned its rights to Plaintiff with respect to the payment of bunkers paid by the Plaintiff.

By reason of premises, Plaintiff's has sustained damages as best as can presently be calculated as follows:

**M.V. AKSOY**

| | | |
|---|---|---|
| Unpaid Hire | $ 225,910.00 | |
| Bunker charges paid to Global to save arrest | $ 32,500.00 | |
| Bunker charges to be paid to Global | $, 39,200.00 | |
| Other port disbursements | $   17,250.00 | |
| Total | .. | $314,860.00 |

**M.V. KARASOY**

| | | |
|---|---|---|
| Unpaid Hire | $ 183,050.00 | |
| Bunker charges paid to Global to save arrest | $ 73,942.60 | |
| Bunker charges to be paid to Global | $ 104,245.00 | |
| Other port disbursements + delivery bunkers | $ 87,550.42 | |
| Loss of Profit | $ 403,200.00 | |
| Total | .. | $ 851,988.02 |
| Grand Total | | $1,166,848.02 |

The Charter also provided in that, if any dispute arises between the parties, the matter in dispute shall be referred to arbitration in London with English law. Plaintiff has or will commence arbitration in London against the Defendants. In addition to its principal claim, Plaintiff is also entitled, in London, to attorneys' fees and other taxable costs incurred or likely to

6

be incurred in bringing this claim, which as best as can presently be calculated, are $300,000.00. (See Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 265 (2d Cir. 2002), where the attachment that the Court of Appeals reinstated covered "an amount that includes interest and anticipated attorneys' and arbitrators' fees").

Arbitration of these disputes in London may take at least 2 years. Plaintiff is entitled to and would receive interest at the present rate of 7.5% compounded quarterly from November 2008 to the completion of the arbitration or about $186,954.34.

Thus, Plaintiff's total claim against Defendants for which it seeks security herein is $ 1,653,802.36 ($1,166,848.02+ $186,954.34 + $300,000).

Upon information and belief, M&B uses Alliance, and Eurobel uses Eurobel GmbH and Herwin Duus as "paying beneficiary" or "pass through" entity such that M&B and Eurobel can insulate themselves from creditors relating to their contracts.

It is not general practice in the maritime community, nor anywhere else, for independent companies to make large payments on behalf of other independent companies.

Payments sent or received on behalf of another independent company are suggestive of a relationship that is not "arms length".

Upon information and belief, Alliance is not only the holding parent of M&B but is also the alter-ego of M&B because it dominates and disregards M&B's corporate form to the extent that Alliance, is carrying on M&B's business and operations as if the same is its own, or vice versa.

Upon information and belief Eurobel GmbH and Herwin Duss are not only the holding parent of Eurobel but are also the alter egos of Eurobel because they dominates and disregards Eurobel's corporate form to the extent that Eurobel GmbH and Herwin Duss are carrying on Eurobel's business and operations as if the same are their own, or vice versa.

Upon information and belief, M&B has no separate identity from Alliance.

Upon information and belief Eurobel has no separate identity from Eurobel GmbH and Herwin Duus.

In the further alternative, M&B and Alliance; and, Eurobel, Eurobel GmbH and Herwin Duus are partners and/or joint ventures.

All and singular the premises are true and within the admiralty and maritime jurisdiction of this Honorable Court.

Plaintiff brings this action by seeking an order of seizure of Defendants' goods and chattels, or credits and effects in the hands of garnishees to be named in the process, in the amount sued for herein, so that the Court shall have jurisdiction to direct Defendants to proceed with the litigation of Plaintiff's claim against Defendants and to retain jurisdiction to enter a judgment upon the award in the London arbitration.

As a result of the foregoing, Plaintiff asserts a claim in the amount of $1,653,802.36 for damages, attorneys' fees and costs and interest in the London arbitration, as nearly as can be estimated at present.

## ARGUMENT

### POINT I

**AN ORDER AUTHORIZING THE ISSUANCE OF PROCESS OF MARITIME ATTACHMENT SHOULD BE GRANTED PURSUANT TO SUPPLEMENTAL RULES B (1) TO ALLOW ATTACHMENT OF DEFENDANT'S ASSETS IN THE HANDS OF NON-PARTIES TO THIS ACTION**

Rule B (1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rule B (1)"), specifically permits prejudgment

attachment in admiralty or maritime cases whenever the defendant cannot be "found" with the district:

> With respect to any admiralty or maritime claim *in personam* a verified complaint may contain a prayer for process to attach the defendant's good and chattels, or credits and effects in the hands of garnishees to be named in the process to the amount sued for, if the defendant shall not be found within the district. Such a complaint shall be accompanied by an affidavit signed by the plaintiff or plaintiff's attorney that, to the affiant's knowledge, or to the best of the affiant's information and belief, the defendant cannot be found within the district. The verified complaint and affidavit shall be reviewed by the court and, if the conditions set forth in this rule appear to exist, an order so stating and authorizing process of attachment and garnishment shall issue.

Plaintiff's claim arises under two charter parties which is a maritime contract and, therefore, is a claim within the admiralty jurisdiction of this Court. G. Gilmore & C. Black, The Law of Admiralty 22, n. 65 (2d ed. 1975). Because Plaintiff possesses a maritime claim, it may secure a maritime attachment pursuant to Supplemental Rule B (1) against all assets and property (up to the amount of the claim) belonging to Defendants which may be situated within the district "if the defendant(s) shall not be found within the district". Supplemental Rule B (1).

For purposes of Supplemental Rule B(1), the term "found within the district" presents a two-pronged inquiry. If the defendants cannot be found within the district for jurisdictional purposes and for service of process, an attachment is permissible. See Seawind Compania, S.A. v. Crescent Line, Inc., 320 F.2d 580, 582 (2d Cir. 1963); see also 29 Moore's Federal Practice § 705.02 [2][b] (Matthew Bender 3d ed.). As explained in the accompanying Affidavit of Rahul Wanchoo, Defendants cannot be found within this District Court under this analysis. Accordingly, the issuance of an order of maritime attachment is proper.

Rule B attachment is also proper in aid of foreign litigation or arbitration. Polar Shipping Ltd. v. Oriental Shipping Corp., 680 F.2d. 627, 632 (9th Cir. 1982); Staronset Shipping Ltd. v.

North Star Navigation Inc., 659 F. Supp. 189, 191 (S.D.N.Y. 1987); Andros Compania Maritima, S.A. v. Andre and Cie, S.A., 430 F. Supp. 88 (S.D.N.Y. 1977). See also Drys Shipping Corp. v. Freight of the M.S. DRYS, 558 F.2d 1050 (2ds Cir. 1977). Maritime attachment and garnishment is available not only against an account maintained by a defendants in New York, but also against any correspondent bank which is used to transfer funds of defendants' in or out of New York. Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263 (2d Cir. 2002).

### POINT II

### AN ORDER AUTHORIZING THE ISSUANCE OF PROCESS OF MARITIME ATTACHMENT SHOULD IN ADDITION TO PLAINTIFF'S PRINCIPAL CLAIM ALSO INCLUDE INTEREST, COSTS AND ATTORNEYS' FEES

Plaintiff seeks to attach Defendants' assets in the hands of non-parties. In order to attach Defendants' assets in the hands of non-parties, an order of attachment and garnishment is required. An Order authorizing the issue of maritime attachment is based not only on the principal amount of the claim but also for interest, attorneys' fees and other taxable costs incurred or likely to be incurred in bringing this claim in London against the Defendants. See, e.g., Consub Delaware LLC v. Schahin Engenharia Limitada, 476 F.Supp.2d 305 (S.D.N.Y. 2007), Sonito Shipping Company Ltd. v. Sun United Maritime Ltd., 478 F.Supp.2d 532 (S.D.N.Y. 2007), and T&O Shipping Ltd. v. Lydia Shipping Co. S.A., 415 F.Supp.2d 310 (S.D.N.Y. 2006). Plaintiff therefore requests that the Court issue an order authorizing process of maritime attachment and garnishment in order to secure Plaintiff's claims against Defendants in the London arbitration in the amount of $1,653,802.36 (U.S. Dollars One Million Six Hundred Fifty Three Thousand Eight Hundred Two and Cents Thirty Six), as nearly as can be estimated at present.

## CONCLUSION

By reason of the foregoing, it is respectfully submitted this Court should issue an Order authorizing the issuance of Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B(1) and Plaintiff should have such other and further relief as is just and proper in the circumstances.

Dated: New York, New York
       January 9, 2009

                                        Respectfully submitted,

                                        **LAW OFFICES OF RAHUL WANCHOO**
                                        Attorneys for Plaintiff
                                        S. SHIPPING INC.

                                        By: _____*Rahul Wanchoo*_____
                                             Rahul Wanchoo (RW-8725)